1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   VALENTIN TRUJILLO,

11            Petitioner,                No. CIV S-04-0789 MCE DAD P

12      vs.

13   STATE OF CALIFORNIA, et al.,

14            Respondents.          FINDINGS & RECOMMENDATIONS

15   _____/

16            Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner alleges that the failure of the Board of

18   Prison Terms (BPT or Board) to find him suitable for parole at a parole suitability hearing on

19   October 10, 2001, violated his right to due process, his rights pursuant to the Fifth and Eighth

20   Amendments, and various state laws.  Upon careful consideration of the record and the

21   applicable law, the undersigned will recommend that petitioner's application for habeas corpus

22   relief be denied.

23                        PROCEDURAL BACKGROUND

24            Petitioner is serving a sentence of life imprisonment with the possibility of parole

25   as a result of his conviction in state court on the charge of kidnapping for ransom.  (Pet. at

26   consecutive page 1.)  Petitioner's minimum eligible parole date (MEPD) was April 21, 2000.

1   (Pet., Ex. D at 1.)  Petitioner received his first parole suitability hearing on March 23, 1999.

2   (Memorandum of Points and Authorities attached to petition (P&A) at 2.)  Petitioner was found

3   unsuitable for parole at that time.  (Id.)  On October 10, 2001, petitioner appeared before a Board

4   panel for his second parole suitability hearing and was again found unsuitable for parole.  (Id.)

5           Petitioner challenged the Board's 2001 decision in a petition for a writ of habeas

6   corpus filed in the Los Angeles County Superior Court.  (Pet., Ex. F.)  That petition was denied

7   on the grounds that the petition contained "only vague conclusory allegations."  (Id.)  Petitioner

8   then filed a petition for a writ of habeas corpus in the California Court of Appeal for the Second

9   Appellate District.  (Pet., Ex. G.)  That petition was denied with the following reasoning:

10          Petitioner's conclusory allegations that the parole board was
            improperly constituted and tried to coerce his testimony do not
11          support his claims.  (People v. Karis (1988) 46 Cal.3d 612, 656.)
            The parole board's decision to deny parole was supported by
12          adequate evidence.  (In re Powell (1988) 45 Cal.3d 894, 903-904.)

13  (Id.)  Petitioner subsequently filed a petition for a writ of habeas corpus in the California

14  Supreme Court which was summarily denied.  (Id. at consecutive p. 3.)

15                                          ANALYSIS

16  I.  Standards of Review Applicable to Habeas Corpus Claims

17          A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

18  some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

19  861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

20  Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

21  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

22  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

23  corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

24  (1972).

25          This action is governed by the Antiterrorism and Effective Death Penalty Act of

26  1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

1   1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

2   habeas corpus relief:

3             An application for a writ of habeas corpus on behalf of a
      person in custody pursuant to the judgment of a State court shall
4     not be granted with respect to any claim that was adjudicated on
      the merits in State court proceedings unless the adjudication of the
5     claim -

6             (1) resulted in a decision that was contrary to, or involved
      an unreasonable application of, clearly established Federal law, as
7     determined by the Supreme Court of the United States; or

8             (2) resulted in a decision that was based on an unreasonable
      determination of the facts in light of the evidence presented in the
9     State court proceeding.

10  28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

11  Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

12            The court looks to the last reasoned state court decision as the basis for the state

13  court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

14  court reaches a decision on the merits but provides no reasoning to support its conclusion, a

15  federal habeas court independently reviews the record to determine whether habeas corpus relief

16  is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

17  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

18  reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

19  AEDPA's deferential standard does not apply and a federal habeas court must review the claim

20  de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

21  1167 (9th Cir. 2002).

22  II.  Petitioner's Claims

23        A.  Due Process

24            Petitioner claims that the failure of the BPT to find him suitable for parole at the

25  hearing held on October 10, 2001 deprived him of his liberty without due process of law because

26  the decision was not based on sufficient evidence.

3

1    The Due Process Clause of the Fourteenth Amendment prohibits state action that

2 deprives a person of life, liberty, or property without due process of law.  A person alleging due

3 process violations must first demonstrate that he or she was deprived of a liberty or property

4 interest protected by the Due Process Clause and then show that the procedures attendant upon

5 the deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v.

6 Thompson, 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir.

7 2002).

8    A protected liberty interest may arise from either the Due Process Clause of the

9 United States Constitution or state laws.  Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).

10 The United States Constitution does not, of its own force, create a protected liberty interest in a

11 parole date even one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981).  However,

12 "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole

13 release will be granted' when or unless certain designated findings are made, and thereby gives

14 rise to a constitutional liberty interest."  McQuillion, 306 F.3d at 901 (quoting Greenholtz v.

15 Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)).  In this regard, California's parole scheme

16 gives rise to a cognizable liberty interest in release on parole even for prisoners who have not

17 already been granted a parole date.  Hayward v. Marshall, ___ F.3d ___, 2008 WL 43716, *4 (9th

18 Cir. Jan. 3, 2008); Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs

19 v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion, 306 F.3d at 903.  Accordingly, this

20 court must examine whether the deprivation of petitioner's liberty interest in this case lacked

21 adequate procedural protections and therefore violated due process.

22    Because "parole-related decisions are not part of the criminal prosecution, the full

23 panoply of rights due a defendant in such a proceeding is not constitutionally mandated."

24 Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and

25 citation omitted).  Where, as here, parole statutes give rise to a protected liberty interest, due

26 process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded

4

notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the

reasons for the denial.  Id. at 1390 (quoting Greenholtz, 442 U.S. at 16).  See also Morrissey v.

Brewer, 408 U.S. 471, 481 (1972) (describing the procedural process due in cases involving

parole issues).  Violation of state mandated procedures will constitute a due process violation

only if the violation causes a fundamentally unfair result.  Estelle, 502 U.S. at 65.

In California, the setting of a parole date for a state prisoner is conditioned on a

finding of suitability.  Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  The

requirements of due process in the parole suitability setting are satisfied "if some evidence

supports the decision."  McQuillion, 306 F.3d at 904 (citing Superintendent v. Hill, 472 U.S.

445, 456 (1985)); Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Perveler v. Estelle,

974 F.2d 1132, 1134 (9th Cir. 1992)).  For purposes of AEDPA, Hill's "some evidence" standard

is "clearly established" federal law.  See Sass, 461 F.3d at 1129 (citing Hill, 472 U.S. at 456).

"The 'some evidence' standard is minimally stringent," and a decision will be upheld if there is

any evidence in the record that could support the conclusion reached by the fact-finder.  Powell,

33 F.3d at 40 (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)); Toussaint v. McCarthy,

801 F.2d 1080, 1105 (9th Cir. 1986).  However, "the evidence underlying the board's decision

must have some indicia of reliability."  Jancsek, 833 F.2d at 1390.  See also Perveler, 974 F.2d at

1134.  Determining whether the "some evidence" standard is satisfied does not require

examination of the entire record, independent assessment of the credibility of witnesses, or the

weighing of evidence.  Toussaint, 801 F.2d at 1105.  The question is whether there is any reliable

evidence in the record that could support the conclusion reached.  Id.

In recent years the Ninth Circuit Court of Appeals has been called upon to address

these issues in four significant cases, each of which will be discussed below.  First, in Biggs the

Ninth Circuit recognized that a continued reliance on an unchanging factor such as the

circumstances of the offense in denying parole could, at some point, result in a due process

violation.  That holding has been acknowledged as representing the law of the circuit.  Irons v.

1   Carey, 505 F.3d 846, 853 (9th Cir. 2007); Sass, 461 F.3d at 1129.  While the court in Biggs

2   rejected several of the reasons given by the Board for finding the petitioner unsuitable for parole,

3   it upheld three:  (1) petitioner's commitment offense involved the murder of a witness; (2) the

4   murder was carried out in a manner exhibiting a callous disregard for the life and suffering of

5   another; and (3) petitioner could benefit from therapy.  Biggs, 334 F.3d at 913.  However, the

6   court in Biggs cautioned that continued reliance solely upon the gravity of the offense of

7   conviction and petitioner's conduct prior to that offense in denying parole could violate due

8   process.  In this regard, the court observed:

> As in the present instance, the parole board's sole supportable
> reliance on the gravity of the offense and conduct prior to
> imprisonment to justify denial of parole can be initially justified as
> fulfilling the requirements set forth by state law.  Over time,
> however, should Biggs continue to demonstrate exemplary
> behavior and evidence of rehabilitation, denying him a parole date
> simply because of the nature of his offense would raise serious
> questions involving his liberty interest in parole.

14  Id. at 916.  The court also stated that "[a] continued reliance in the future on an unchanging

15  factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the

16  rehabilitative goals espoused by the prison system and could result in a due process violation."

17  Id. at 917.

18          In Sass, the Board found the petitioner unsuitable for parole at his third suitability

19  hearing based on the gravity of his convicted offenses in combination with his prior offenses.

20  461 F.3d at 1126.  Relying on the decision in Biggs, the petitioner in Sass contended that reliance

21  on these unchanging factors violated his right to due process.  The court disagreed, concluding

22  that these factors amounted to "some evidence" to support the Board's determination.  Id. at

23  1129.  The court provided the following explanation for its holding:

> While upholding an unsuitability determination based on these
> same factors, we previously acknowledged that "continued reliance
> in the future on an unchanging factor, the circumstance of the
> offense and conduct prior to imprisonment, runs contrary to the
> rehabilitative goals espoused by the prison system and could result

in a due process violation." Biggs, 334 F.3d at 917 (emphasis added).  Under AEDPA it is not our function to speculate about how future parole hearings could proceed.  Cf. id.  The evidence of Sass' prior offenses and the gravity of his convicted offenses constitute some evidence to support the Board's decision. Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d).

Id.

Subsequently, in Irons the Ninth Circuit sought to harmonize the holdings in Biggs and Sass, stating as follows:

Because the murder Sass committed was less callous and cruel than the one committed by Irons, and because Sass was likewise denied parole in spite of exemplary conduct in prison and evidence of rehabilitation, our decision in Sass precludes us from accepting Iron's due process argument or otherwise affirming the district court's grant of relief.

We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence. Specifically, in Biggs, Sass, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. Biggs, 334 F.3d at 912; Sass, 461 F.3d 1125. All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.

Furthermore, we note that in Sass and in the case before us there was substantial evidence in the record demonstrating rehabilitation. In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole. We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes. Biggs, 334 F.3d at 917.

Irons, 505 F.3d at 853-54.

1          Finally, and most recently, in <u>Hayward</u>, the Ninth Circuit determined that, under

2   the "unusual circumstances" of that case, the unchanging factor of the gravity of the petitioner's

3   commitment offense did not constitute "some evidence" supporting the governor's decision to

4   reverse a parole grant on the basis that the petitioner would pose a continuing danger to society.

5   <u>Hayward</u>, 2008 WL 43716 at *8.  The "unusual circumstances" present in that case were the

6   following:  (1) the petitioner had served twenty-seven years in prison on a sentence of fifteen

7   years-to-life; (2) the petitioner was sixty-four years old; (3) after eleven parole suitability

8   hearings, the Board had twice recommended that the petitioner receive a parole date; (4) former

9   California governor Gray Davis reversed the Board's second grant of parole based on seven

10  factors, four of which were unsupported by the record and three of which were based on

11  unchanging circumstances; (5) the provocation for petitioner's crime was the attempted rape of

12  the petitioner's girlfriend (and future wife) by the victim; (6) the petitioner had solid parole

13  plans, including several offers of employment and a place to live; and (7) the petitioner had an

14  "exemplary" prison record for most of his period of incarceration, with his last major disciplinary

15  violation in 1989 and a minor disciplinary infraction in 1997.  <u>Id.</u>  Against this background the

16  Ninth Circuit explained:

17          In light of the extraordinary circumstances of this case – given the
        provocation for Hayward's violent crime in 1978, his incarceration
18          for almost thirty years with his positive prison record in recent
        times, and the favorable discretionary decisions of the Board in
19          successive hearings, which were reversed by the Governor on
        factual premises most of which were not documented in the record
20          – we conclude that the unchanging factor of the gravity of
        Hayward's commitment offense had no predictive value regarding
21          his suitability for parole.  In the circumstances of this case, the
        Governor violated Hayward's due process rights by relying on that
22          stale and static factor in reversing his parole grant.

23  <u>Id.</u>

24         After taking into consideration the Ninth Circuit decisions in <u>Biggs</u>, <u>Sass</u>, <u>Irons</u>,

25  and <u>Hayward</u>, and for the following reasons, this court concludes that petitioner is not entitled to

26  federal habeas relief on his challenge to the October 10, 2001 Board decision denying him parole.

8

1    The Board commenced its decision finding petitioner unsuitable for parole at the

2    October 10, 2001 parole suitability hearing by stating that the panel had reviewed "all

3    information received from the public" and had concluded that "the prisoner is not yet suitable for

4    parole and he would pose an unreasonable risk of danger to society or a threat to public safety if

5    released from prison." (Answer, Ex. B at 46.)  The phrases "unreasonable risk of danger to

6    society" and "a threat to public safety" are derived from § 3041(b) of the California Penal Code

7    and § 2281(a) of Title 15 of the California Code of Regulations.  Pursuant to California Penal

8    Code § 3041(b),

9         [t]he panel or board shall set a release date unless it determines that
          the gravity of the current convicted offense or offenses, or the
10        timing and gravity of current or past convicted offense or offenses,
          is such that consideration of the public safety requires a more
11        lengthy period of incarceration for this individual, and that a parole
          date, therefore, cannot be fixed at this meeting.

12

13   The state regulation that governs parole suitability for life prisoners states as

14   follows with regard to the statutory requirement of California Penal Code § 3041(b):

15   "Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied

16   parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to

17   society if released from prison." Cal. Code Regs. tit. 15, § 2281(a).  The same regulation

18   requires the Board to consider all relevant, reliable information available regarding

19        the circumstances of the prisoner's social history; past and present
          mental state; past criminal history, including involvement in other
20        criminal misconduct which is reliably documented; the base and
          other commitment offenses, including behavior before, during and
21        after the crime; past and present attitude toward the crime; any
          conditions of treatment or control, including the use of special
22        conditions under which the prisoner may safely be released to the
          community; and any other information which bears on the
23        prisoner's suitability for release.

24   Cal. Code Regs. tit. 15, § 2281(b).

25   The regulation identifies circumstances that tend to show suitability or

26   unsuitability for release.  Id., § 2281(c) & (d).  Under that regulation, the following

9

1   circumstances tend to show that a prisoner is suitable for release:  the prisoner has no juvenile

2   record of assaulting others or committing crimes with a potential of personal harm to victims; the

3   prisoner has experienced reasonably stable relationships with others; the prisoner has performed

4   acts that tend to indicate the presence of remorse or has given indications that he understands the

5   nature and magnitude of his offense; the prisoner committed his crime as the result of significant

6   stress in his life; the prisoner's criminal behavior resulted from having been victimized by

7   battered women syndrome; the prisoner lacks a significant history of violent crime; the prisoner's

8   present age reduces the probability of recidivism; the prisoner has made realistic plans for release

9   or has developed marketable skills that can be put to use upon release; institutional activities

10  indicate an enhanced ability to function within the law upon release.  Id., § 2281(d).

11          The regulation also identifies the following circumstances as tending to indicate

12  unsuitability for release:  the prisoner committed the offense in an especially heinous, atrocious,

13  or cruel manner; the prisoner had a previous record of violence; the prisoner has an unstable

14  social history; the prisoner's crime was a sadistic sexual offense; the prisoner had a lengthy

15  history of severe mental problems related to the offense; the prisoner has engaged in serious

16  misconduct in prison.  Id., § 2281(c).  Factors to consider in deciding whether the prisoner's

17  offense was committed in an especially heinous, atrocious, or cruel manner include:  multiple

18  victims were attacked, injured, or killed in the same or separate incidents; the offense was carried

19  out in a dispassionate and calculated manner, such as an execution-style murder; the victim was

20  abused, defiled or mutilated during or after the offense; the offense was carried out in a manner

21  that demonstrated an exceptionally callous disregard for human suffering; the motive for the

22  crime is inexplicable or very trivial in relation to the offense.  Cal. Code Regs., tit. 15, §

23  2281(c)(1)(A) - (E).  Under current California law, the Board is apparently not required to refer

24  to sentencing matrixes nor to compare the prisoner's crime to other crimes of the same type in

25  deciding whether the crime was especially cruel or exceptionally callous but instead may find the

26  /////

10

crime especially cruel or exceptionally callous if there was violence or viciousness beyond what

was "minimally necessary" for a conviction.  In re Dannenberg, 34 Cal. 4th 1061, 1095 (2005).

The Board, in addressing the factors it considered in reaching its decision that

petitioner was unsuitable for parole, stated as follows:

> PRESIDING COMMISSIONER LAWIN:
>
> We're back on record and all parties have returned to the room for the hearing for Valentin Trujillo.  The Panel reviewed all information received from the public and relied on the following circumstances in concluding that the prisoner is not yet suitable for parole and he would pose an unreasonable risk of danger to society or a threat to public safety if released from prison.  The commitment offense was carried out in an especially cruel manner.  It was the kidnap for ransom of Maria Rodriguez.  She was taken in her own car.  The inmate broke into her car and hid in it until she came out from work.  He – after she drove a bit, he made his presence known to her by holding a stun gun to her neck.  He told her to drive into another area, where a second crime partner met up with them.  The two of them then took Ms. Rodriguez to a garage.  They demanded ransom of her family of $100,000, and after two days time they had not received the ransom and they did apparently drive to her residence or near her residence to release her physically unharmed.  But this offense was carried out in a manner which demonstrates a callous disregard for human suffering.  She was not physically harmed; however, she was held hostage for a couple of days and she was probably, at least, terrorized.  The prisoner had no previous record.  Institutionally, he has not sufficiently participated in beneficial self-help programs.  The prisoner lacks realistic parole plans in that he does not have viable residential plans nor does he have acceptable employment plans.  And I think, Mr. Trujillo, at least I hope I've given you some idea of what we need to see in regard to letters and that you will have to attempt to get them translated before.  Maybe your family and your friends can go directly to a translator in Mexico, give them their letters, and have it done right then and there.  And be – ask them to be very specific in what they're offering, too, would be helpful.  He does have a US active INS hold, and he will be returning to Mexico upon his release.  The Hearing Panel notes that responses to PC 3042 notices indicate opposition to a finding of parole suitability, specifically from the District Attorney's office of Los Angeles County.  Also, the inmate's counselor, D. Hickey, believes he would pose an unpredictable degree of threat to the public.  The Panel finds that the prisoner needs continued therapy in order to face, discuss, understand and cope with stress in a non-destructive manner and to further delve into the causative factors for his participation in this life crime.  Until further progress is made, he continues to be unpredictable and a threat to others.  Nevertheless,

he should be commended for the fact that he has no discipline. He's not had a single 115 nor a 128(a) counseling chrono since his incarceration, and that's exemplary. He also has acquired the certification as an optical technician, has spent some time in janitorial, and is currently working very hard in welding to acquire the certification there. He has participated in Bible studies and Life Plans for Recovery, and has (indiscernible) as well as AA, and has received good work reports previously in PIA Optical and culinary and in serving as a clerk. These positive aspects of his behavior, however, do not outweigh the factors of unsuitability. In a separate decision, the Hearing Panel finds that it is not reasonable to expect that parole would be granted in a hearing during the following two years, and the specific reasons for this finding are as follows. The prisoner committed the kidnap for ransom of Maria Rodriguez in an especially cruel manner. He held a stun gun to her – against her body after he broke into her car. He waited for her in her car, then had her drive to a different location, held her while he made phone calls to demand $100,000 ransom. When it became apparent that he wasn't going to get the ransom money, he did ultimately release her. But this offense was carried out in a manner which demonstrates a callous disregard for human suffering. And, although the prisoner does not have a history of criminality, he certainly has a history of misconduct in that he was a cocaine, marijuana user, and indicated that he was using it quite a bit at the time of the commitment offense. There are two rather conflicting psychological reports. The most recent one is really just an addendum to a prior report conducted in 1998, and it is really not clear in this Panel's mind as to Dr. Gaudet's opinion of the inmate's assessment of dangerousness. Therefore, we're going to ask that a new psychological evaluation be conducted prior to the next hearing, so hopefully we will get those issues settled or at least get a current opinion of the inmate's assessment of dangerousness by a psychologist. And the prisoner has not completed the necessary programming which is essential to his adjustment, and needs additional time to gain such programming, specifically he needs to participate in self-help programs and continue his participation in AA. Also, the counselor believes he would pose an unpredictable degree of threat to the public; therefore a longer period of observation is required before the Board should find him suitable for parole. Panel recommends that the prisoner remain disciplinary free and, if available, continue to upgrade vocationally, complete your welding certification, and, if available, participate in self-help. Mr. Trujillo, you are doing a great job programming, but this Panel felt that you were being less than maybe open is the right word to use, or less than honest with us and with yourself about your participation in this life crime. You put if off as having something of a minor role in developing it. You do certainly take responsibility for kidnapping Ms. Rodriguez, for making the telephone calls, but you really portray to us that this is almost something minor, that it's something that – I'm really kind of at a loss for words. But you don't come across as being

very sincere about your remorse for what you did.  And I hope that
you will spend some time thinking about your participation, why
you got involved in this, what you did to that family, what you did
to Ms. Rodriguez.  And I hope that you will be able to get into
some self-help groups that will cause you to look further into your
participation and not focus so much on the amount of time you've
spent in here, but focus on the quality of time that you've spent
here.  And I wish you good luck.

(Answer, Ex. B at 46-51.)

After thorough review, this court cannot say that the record of petitioner's October

10, 2001 suitability hearing is "so devoid of evidence that the findings of the disciplinary board

were without support or otherwise arbitrary."  Hill, 472 U.S. at 457.  Aside from the unchanging

facts of the crime itself, the panel members relied on the following additional factors to find

petitioner unsuitable for parole: (1) psychological reports regarding petitioner's suitability for

parole were unclear; (2) petitioner needed additional therapy, especially in light of the fact that he

appeared to minimize his substantial role in the crime; (3) petitioner did not have definite plans

for parole;[1] and (4) petitioner's counselor believed he would pose an unpredictable degree of

danger to the public.  These factors amounted to "some evidence" to support the Board's

determination.  Although petitioner contests several of these factors, they all find some support in

the record before this court.[2]  Further, it was not unreasonable for the Board to conclude that

petitioner's crime was "especially cruel" and demonstrated a "callous disregard for human

suffering," where petitioner kidnapped the victim and held her for two days in a garage before

releasing her.  This is not a situation, as in Hayward, where the petitioner had been found suitable

for parole twice by the Board, where most of the governor's reasons for rejecting the Board's

---

[1]  In reaching this conclusion, it appears that the Board may have declined to consider
untranslated letters written in Spanish on petitioner's behalf.

[2]  Petitioner has submitted evidence from subsequent parole consideration hearings in
support of his arguments in the instant petition.  (Traverse at 11, 14 & Ex. C.)  This evidence,
which was generated after the 2001 hearing at issue here, is irrelevant.  Petitioner is advised that
if he wishes to challenge parole suitability hearings that occurred after the 2001 hearing, he must
file a separate action challenging the parole decisions rendered at those hearings.

13

1  recommendation found no support in the record, and where the petitioner had served far longer in

2  prison than his minimum sentence required.  Applying federal law, as discussed above, the court

3  concludes that the BPT's 2001 decision that petitioner was unsuitable for parole at that time was

4  supported by "some evidence" that bore "indicia of reliability."  Accordingly, the state court

5  decision denying petitioner's due process claim is not contrary to or an unreasonable application

6  of federal authority and may not be set aside.

7         B.  Fifth and Eighth Amendments

8              Petitioner claims that his Fifth Amendment right not to incriminate himself, his

9  Fourteenth Amendment right to due process, his Eighth Amendment right to be free from cruel

10 and unusual punishment, and various state laws were violated when several Board members

11 asked him repeatedly to clarify his exact role in the crime.  Petitioner contends that, although he

12 was not the mastermind of the kidnapping plot, the Board "forced" him "to accept or take full

13 leadership responsibility for the aforementioned crime for which he is serving natural life in

14 prison." (P&A at 7.)  Petitioner claims that the Board's actions forced him to incriminate himself

15 and inflicted "unnecessary mental and emotional pain."  (Id. at 8.)

16             The transcript of the 2001 parole revocation hearing reflects that one of the Board

17 members asked petitioner whether he was the "ringleader," or the person who "came up with the

18 idea to kidnap the girl." (Answer, Ex. B at 37.)  Petitioner denied this.  (Id.)  The Deputy District

19 Attorney then asked the Board to clarify whether the crime was instigated by two friends of

20 petitioner's, as the probation report indicated, or by only one person, who was deceased at the

21 time of the 2001 hearing.  (Id. at 38.)  Petitioner clarified that a man in a park offered him the job

22 of kidnapping the victim.  (Id. at 38-39.)  After petitioner's attorney asked several questions, the

23 District Attorney argued to the Board as follows:

24             I think what we have is an inmate who is not taking a close look at
              his role in the commitment offense; he's presently spending his
25             time exercising and going to AA meetings.  Although it's laudable
              that he's not picked up any disciplinary infractions while doing his
26             time for the commitment offense, he has not yet gained insight into

14

1  
2  
3  
4

the commitment offense and his role in it.  Initially he tells authorities that there were two individuals who recruited him in a Benicia Park.  Subsequently, the brains behind the operation is reduced to just one, who coincidentally is no longer with us because he jumped from a bridge.  This inconsistency, I think, reflects the inmate has not come to terms with his role in the commitment offense.

5  (Id. at 41-42.)  The District Attorney later argued that until petitioner came "to terms" with his

6  "leadership role in the offense," he remained an unreasonable risk to society.  (Id. at 43.)  As

7  described above, in its decision finding petitioner unsuitable for parole Commissioner Lawin

8  opined that petitioner was being "less than honest with us and with yourself" about his

9  participation in the crime.  (Id. at 50.)

10             Petitioner argues that the events related above violated his federal constitutional

11  rights.  This court disagrees.  Petitioner was not "forced" to admit any particular incriminating

12  acts.  Rather, the Board attempted to clarify petitioner's role in the kidnapping in order to

13  determine whether he had come to terms with his past actions.  In fact, petitioner did not admit to

14  being the ringleader and he was not "forced" to do so.  Asking a prisoner at a parole suitability

15  hearing to explain his full role in the crime is not the equivalent of "forcing" perjured testimony

16  in a criminal proceeding, in violation of the Fifth Amendment.  See Chavez v. Martinez, 538

17  U.S. 760, 770 (2003) ("a violation of the constitutional right against self-incrimination occurs

18  only if one has been compelled to be a witness against himself in a criminal case.")  This court

19  also notes that most of the comments regarding petitioner's failure to take full responsibility for

20  the crime were made by the District Attorney and not by the Board.

21             With respect to the Eighth Amendment, petitioner has cited no case holding that

22  encouraging an inmate at a parole suitability hearing to explain his role in the crime causes undue

23  pain or results in the imposition of cruel and unusual punishment.  Accordingly, petitioner's

24  claim based on the Eighth Amendment should be rejected.  Finally, although the Board

25  mentioned petitioner's perceived lack of transparency about his role in the crime when it

26  announced its decision, it did not rely on this factor alone to find petitioner unsuitable for parole.

1   As described above there was "some evidence" in the record to support the Board's ultimate

2   decision.  Accordingly, the Board's decision to find petitioner unsuitable did not violate his right

3   to due process.

4          There is no evidence that petitioner's right against self-incrimination, his right to

5   due process, or his right to be free from cruel and unusual punishment were violated when the

6   Board asked petitioner to clarify his role in the crime.  Accordingly, petitioner is not entitled to

7   relief on these claims.

8          C.  Violation of State Laws

9          Petitioner claims that the Board's decision to find him unsuitable for parole

10  violated various provisions of California law.  Specifically, petitioner contends that: (1) the

11  Board failed to weigh circumstances tending to show suitability for parole, as required by the

12  California Code of Regulations, because the Board panel was biased against petitioner; and (2)

13  the Board does not reflect a fair cross-section of the community, as required by the California

14  Penal Code.  (P&A at 3-7.)  Petitioner also claims these deficiencies violated his federal right to

15  due process.  (Id. at 6.)  Petitioner has not substantiated these claims based upon state law with

16  any specific evidence.

17         Petitioner's arguments that the Board's actions and racial/economic makeup are

18  violative of California law are not cognizable in this federal habeas corpus proceeding and are

19  unsubstantiated in any event.  Estelle, 502 U.S. at 67-68.  Petitioner's claim that the Board's

20  failure to comply with California law violated his right to due process is vague and conclusory

21  and should be rejected on that basis.  See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995)

22  ("'[c]onclusory allegations which are not supported by a statement of specific facts do not

23  warrant habeas relief'") (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).  Accordingly,

24  petitioner is not entitled to relief on these claims.[3]

25

26         [3]  In the traverse, petitioner contends that: (1) the Board is failing to set parole release
    dates in a manner that provides uniform terms for inmates who have committed offenses of

16

1

CONCLUSION

2    For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

3 application for a writ of habeas corpus be denied.

4    These findings and recommendations are submitted to the United States District

5 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

6 days after being served with these findings and recommendations, any party may file written

7 objections with the court and serve a copy on all parties.  Such a document should be captioned

8 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

9 shall be served and filed within ten days after service of the objections.  The parties are advised

10 that failure to file objections within the specified time may waive the right to appeal the District

11 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

12 DATED: February 5, 2008.

13

14    _____

15    DALE A. DROZD
      UNITED STATES MAGISTRATE JUDGE

16 DAD:8
   trujillo789.hc

17

18

19

20 similar gravity and magnitude, in violation of California law; (2) he has already served more time
21 than California law requires for his crime; and (3) he has served more time in prison than other
   inmates who have committed similar or more serious crimes.  (Traverse at 5-7.)  Petitioner also
22 argues that the BPT is required to adhere to a formula (the "Matrix System") in setting his release
   date.  (Id. at 7.)  Many of petitioner's arguments in this regard have been rejected by the
23 California Supreme Court in Dannenberg, 34 Cal. 4th at 1061 (holding that the Board is not
   required to refer to its sentencing matrices or to compare other crimes of the same type in
24 deciding whether a prisoner is suitable for parole).  More importantly for purposes of this federal
   habeas corpus action, petitioner has not cited any federal law for the proposition that the Due
25 Process Clause requires a state parole board to either set a parole date where the board members
   believe a prisoner poses an unreasonable risk of danger to society, engage in a comparative
26 analysis before denying parole suitability, or set a parole date within a state's "matrix."
   Accordingly, petitioner is not entitled to relief on these claims.

17